Vail v. Judson.

---

JOSEPH W. VAIL and another v. CURTIS JUDSON.

Where authority to contract debts in the name of a third person is justly implied from the acts of the parties, the authority continues until notice of its revocation; but such notice may be given by the agent as well as by the principal.

And when the creditor is informed of the revocation from any source, the liability ceases.

A principal cannot be charged with admissions of the agent made after the termination of his authority.

IT appeared from the evidence in this cause, that one King, being the owner of stables adjoining the rear of a hotel of which the defendant was the proprietor, had been accustomed, down to a certain period, to purchase feed of the plaintiffs in the defendant's name, and that bills therefor had been paid by the latter. This action was brought to recover payment for feed furnished to King, but charged to the defendant. The Marine Court gave judgment in favor of the plaintiff, from which the defendant appealed. The grounds of appeal discussed in the opinion were two : first, that the court below had received in evidence, to prove the correctness of accounts forming the demand in suit, admissions of King, the defendant's alleged agent, made after the disputed

bills were rendered ; and, secondly, that the judgment in-
cluded items of account charged subsequently to a.time when
the plaintiffs had been told by King that he had no authority,
after the statement in question, to use the name of any per-
son in effecting his purchases.

*Randolph W. Townsend*, for the defendant.

*Smith E. Lane* and *Thos. C. T. Buckley*, for the plaintiffs.

By THE COURT. INGRAHAM, FIRST J.—Upon the trial of
this cause, the defendant was sought to be made liable for
feed sold to one King, but charged to Judson, upon the
ground, that by the previous dealings between the parties,
the defendant had given to King a credit, by which he was
enabled to purchase goods in the defendant's name, and that
such course of dealing was sanctioned by the defendant.

Requa, a witness called by the plaintiffs to prove the facts
above stated, was asked as to a conversation with King, and
as to the amount of goods purchased by him. This was
objected to. The objection was overruled, and the defendant
excepted. The answer of the witness showed admissions of
King, after the bills were rendered, that the accounts were
correct, and the same admission was made on the day of the
trial.

The rule as to the admissions of an agent, which can affect
the principal, is well settled to apply only to such statements
as are made by him, either at the time of making the agree-
ment about which he was employed, or in acting within the
scope of his authority. (1 Phil. Ev. 101.) If any fact ma-
terial to the interest of the party rests in the knowledge of
an agent, the general rule is, that it ought to be proved by
his testimony, and not his assertion.

Thus, the letters of an agent cannot be received to show
what facts he has stated as agent. (*Blight* v. *Ashley*, Peters'
C. C. Rep. 15; see *Webb* v. *Alexander*, 7 Wend. 281; *Easton*
v. *Parker*, 3 Rem. 458; 6 Serg. & Rawle, 206; 7 Greenl. 421;

7 Wend. 446.) And in *Wood* v. *Mead*, N. Y. C. Pleas, May, 1844, this question was fully examined, and we held that such admissions were not evidence to charge the principal. (See, also, 4 Rawle, 291.)

It is said that this evidence, if improperly admitted, was immaterial, because the delivery of the goods was subsequently proven by King himself on his cross examination. No such evidence is returned to us, nor do I, in the whole case, see any other proof of the property sold, or its value.

It appeared in evidence in this case, that King told one of the plaintiffs that he had no authority thereafter to use any person's name in buying feed. This was in May, after he had removed to Bank street. Notwithstanding this evidence, the defendant was held responsible for goods subsequently sold, upon the ground, as stated in the points both of the appellant and respondents, that the notice must proceed from the party to be charged, and not from the party making the purchase.

No such distinction exists, that I am aware of, and the reason for holding a party liable under such circumstances refutes such a proposition. The creditor is entitled to charge a party in such a case for goods bought in his name, because his original authority, or his course of dealing in recognizing the purchases, has led the creditor to suppose that they were made by his assent, and on his own account. So long as that presumption can continue, so long the creditor may sell on the credit of the party who first authorized or sanctioned such a course of dealing. But when, from any cause, the creditor becomes informed that the connection between the parties is terminated, and the authority has ceased, neither justice nor equity requires that his liability should continue. "The implied authority arising from employment continues after the agency has ceased, unless the parties giving the credit either may be supposed to have had notice of the change, or from length of time or other circumstances ought not to have inferred that it continued." (Principal and Agent, p. 233.) The same rule is applicable to partnerships after

dissolution. Persons who have heretofore dealt with the firm are entitled to notice of the dissolution; but if such notice is brought to their knowledge, it is immaterial whether it came from the members of the firm or from third parties. The object of the notice was to prevent them from giving credit to a firm which had ceased to exist, without their knowledge; and the moment that knowledge was communicated, the credit could not be given in ignorance of the dissolution. So, in this case, after the agent had himself informed the credi tors that his power and authority to use the name of another had ceased, there can be no pretence that they acted in giving credit to King in ignorance of the change which had taken place in the relations between King and Judson; and the only ground upon which such implied authority was to be presumed, was taken away.

It may be that other acts of the defendant may be shown, which, in connection with the evidence now in the case, may be sufficient to justify a finding against the defendant, notwithstanding such notice; but I do not think the present case warrants it, and it is unnecessary now to discuss this point any further, because the other exception is a good one, and the judgment must be reversed.

Judgment reversed.